UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

RICHARD SAMSON,

                Plaintiff,

-vs-                                         Case No.  2:11-cv-6-UA-DNF

FEDERAL EXPRESS CORPORATION,

                Defendant.
_____/

## O R D E R

Plaintiff Richard Samson has filed claims under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.* ("FCRA") against Defendant Federal Express Corporation ("FedEx"), alleging that FedEx revoked an offer of employment upon discovery that Mr. Samson has Type-I, insulin-dependent diabetes.  FedEx has filed a motion for summary judgment on all claims (Doc. 55), and Mr. Samson has filed a response in opposition (Doc. 61).

Upon due consideration, and for the reasons that follow, the Court finds that the motion for summary judgment is due to be Granted.

### Undisputed Material Facts

A.   The Parties

FedEx is a certified air carrier providing package delivery service through its movement of aircraft and commercial motor vehicles on public roadways.  FedEx's Air Operation Division operates aircraft carrying packages from locations throughout the

United States into and out of several Florida airport locations. FedEx has its own designated facilities, called "Ramps" located at the Tallahassee, Jacksonville, Orlando, Tampa, Ft. Myers, Ft. Lauderdale, and Miami airports. When the aircraft arrive at the Ramps, the packages are unloaded off the aircraft, sorted for destination to various locations, and moved onto both tractor-trailers and straight trucks. These vehicles utilize public roadways to transport the packages to various other FedEx stations within Florida, and eventually to customers. There is no dispute that FedEx engages in interstate commerce, that FedEx is registered with the Department of Transportation ("DOT") as an interstate carrier, and that the tractor-trailers and straight trucks constitute "commercial motor vehicles" regulated by the DOT.[1]

Richard Samson has spent his entire adult life working as a vehicle mechanic. In 1995, Mr. Samson was diagnosed with Type-I diabetes which he treats with insulin. There is no evidence that any physician has ever placed any limitations or restrictions on Mr. Samson related to his diabetes, if he takes his insulin as directed. Mr. Samson contends that he is substantially limited in the major life activities of eating and caring for himself, as well as in the operation of his endocrine system.

---

[1]An interstate "motor carrier" is a person or entity providing commercial motor vehicle transportation for compensation. 49 U.S.C. § 13102(14). A "commercial motor vehicle" is defined as a motor vehicle used on the highways in interstate commerce to transport property with a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds. 49 U.S.C. § 31132(1); 49 C.F.R. § 390.5.

B.    The Senior Global Vehicle Technicians/DOT/CDL Position

FedEx employs Senior Global Vehicle Technicians/DOT/CDL ("Technicians") at their designated Ramps in Florida and nationwide.  FedEx's job description for these positions lists the Technician's essential job duties/responsibilities to include: (1) repairing, modifying, and performing preventative maintenance inspections, and troubleshooting field vehicle fleet and ground support equipment; (2) diagnosing sources of trouble, disassembling equipment and performing repairs; (3) making necessary adjustments in machinery for safe and efficient operations; (4) completing required paperwork; (5) maintaining a clean and safe work area; (6) providing assistance, guidance, and direction to other Technicians and Technician trainees; (7) completing project work; (8) ensuring maintenance related materials are maintained at approved inventory levels; and (9) interfacing with customers, FedEx employees, and vendors regarding vehicle repairs. See Deposition of Mahase Madoo, Plaintiff's Ex. 13 (Doc. 56-7).

The job description also states that a Technician "must possess all certifications/licenses as required according to federal, state, and local law," and requires the employee to complete a "medical exam in accordance with FHWA or FAA regulations." Id.[2]

In order to troubleshoot or diagnose the cause of a reported mechanical problem, and to verify afterward that repairs are complete, Technicians operate both tractor-trailers

---

[2]FHWA stands for "Federal Highway Administration."

and straight trucks on public roadways.  <u>See</u> Declaration of Theodore Steckel, ¶¶ 6-11 (Doc. 56-10); Declaration of John Takacs, ¶¶ 4-6 (Doc. 56-11); Declaration of Delroy Howell, ¶¶ 6-8 (Doc. 56-12).  Technicians receive extensive training on tractor, trailer and straight truck operations, and defensive driving techniques.  <u>See</u> Declaration of Joseph S. Andrews, ¶¶ 4-8 (Doc. 56-13).  Technicians are also given check-rides annually, whereby a Technician is evaluated on his or her ability to operate vehicles on public roadways.  <u>See</u> Deposition of John Rotundo, pp. 92-95 and Ex. 1 (Doc. 64).

From January 1, 2007 through November 16, 2011, Technicians located at various facilities in Florida operated commercial motor vehicles on Florida's public roadways for a sum total of 766 hours and 6 minutes.  <u>See</u> Declaration of Scott E. Payne, ¶ 8 (Doc. 56-14).  The commercial motor vehicles the Technicians repair and maintain frequently travel back and forth between multiple locations in Florida and Georgia.  <u>See</u> Declaration of Donald Miller, ¶¶ 9-10, 12-13 (Doc. 56-1).

## C.    Applicable DOT Regulations

The Commercial Motor Vehicle Safety Act, 49 U.S.C. § 31301, *et seq.*, authorizes the Department of Transportation to promulgate "minimum safety standards" to ensure "the physical condition of operators of commercial motor vehicles is adequate to enable them to operate the vehicles safely. . . ." 49 U.S.C. § 31136(a)(3).  The Act further authorizes the DOT to "prescribe regulations on minimum uniform standards for the issuance of commercial drivers' licenses and learner's permits . . . " 49 U.S.C. § 31308.

The DOT, through its Federal Motor Carrier Safety Administration, has promulgated regulations covering operators of commercial motor vehicles. Operators of vehicles with a gross vehicle weight rating or gross vehicle weight of 10,001 pounds or higher, which are "used on a highway in interstate commerce to transport persons or property," must be "DOT qualified." This means that the operator must pass a DOT medical exam (among other things), and is then issued a DOT Medical Certification allowing the operator to drive the vehicle. See 49 C.F.R. § 390.5.[3] See also 49 C.F.R. § 390.3(a) (the Federal Motor Carrier Safety Regulations "are applicable to all employers, employees, and commercial motor vehicles, which transport property or passengers in interstate commerce.").

For operators of commercial motor vehicles with a gross vehicle weight rating or gross vehicle weight of 26,001 pounds or greater, which are used in commerce to transport passengers or property, the DOT has imposed the additional requirement of obtaining a commercial driver's license. 49 C.F.R. §§ 383.5, 390.3(b). The regulations broadly define

---

[3]Interstate commerce is defined as "trade, traffic, or transportation in the United States –

(1) Between a place in a State and a place outside of such State (including a place outside of the United States);

(2) Between two places in a State through another State or a place outside of the United States; or

(3) Between two places in a State as part of a trade, traffic, or transportation originating or terminating outside of the State or the United States.

Intrastate commerce means any trade, traffic, or transportation in any State which is not described in the term "interstate commerce."

49 C.F.R. § 390.5.

"commerce" as "(a) any trade, traffic or transportation within the jurisdiction of the United States between a place in a State and a place outside of such State, including a place outside of the United States and (b) trade, traffic, and transportation in the United States which affects any trade, traffic, and transportation described in paragraph (a) of this definition." 49 C.F.R. § 383.5.

It is undisputed that FedEx's tractors average 32,000 pounds, its trailers add an additional 19,000 pounds (unloaded), and straight trucks average 33,000 pounds. Declaration of Mahase G. Madoo, ¶ 7 (Doc. 56-8). Therefore, the requirement that all operators possess a commercial driver's license applies to FedEx's vehicles and its employees who operate such vehicles.[4]

In order to obtain a commercial driver's license, an operator must obtain a DOT Medical Certification, and must carry a current medical examiner's certificate that he or she is physically qualified to drive a commercial motor vehicle. 49 C.F.R. §§ 391.41(a)(1)(I), 391.43, 391.45. See also Allen v. Republic Silver State Disposal, Inc., No. 2:10-cv-827 JCM (VCF), 2012 WL 458429 at * 1 (D. Nev. Feb. 10, 2012). No employer "may knowingly allow, require, permit, or authorize a driver to operate a [commercial motor vehicle] in the United States" who does not have a current commercial driver's license. 49 C.F.R.

---

[4]The regulations define the term "driver" as "any person who operates any commercial vehicle," 49 C.F.R. § 390.3, and define "employee" as "any operator of a commercial motor vehicle, including full, time, regularly employed drivers; casual, intermittent or occasional drivers; leased drivers and independent, owner-operator contractors (while in the course of operating a commercial motor vehicle) who are either directly employed or under lease to an employer." 49 C.F.R. § 383.5. The regulations do not, however, define the terms "operates" or "operator."

§383.37.  The regulations make clear that all requirements and standards for obtaining a commercial driver's license, including the successful completion of a DOT medical examination, apply "to every person who operates a commercial motor vehicle, . . . in interstate or intrastate commerce and to all employers of such persons."  49 C.F.R. §§383.3(a); 390.3(b) (emphasis added).

The DOT has further mandated that a person "must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so. . . ."  49 C.F.R. §391.41(a)(1)(i).  A medical examiner listed on the National Registry of Certified Medical Examiners must conduct the examination, and "certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely."  49 C.F.R. § 391.43(f).  With respect to diabetes, the regulations are clear:  "[i]f insulin is necessary to control a diabetic driver's condition, the driver is not qualified to operate a commercial motor vehicle in interstate commerce."  Id.  See also 49 C.F.R. § 391.41(b)(3) ("A person is physically qualified to drive a commercial motor vehicle if that person – (3) Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control.").

In compliance with these regulations, FedEx has continuously required all persons who operate commercial motor vehicles, including Technicians, to successful complete a medical examination and obtain a commercial driver's license.  See Declaration of Larry W. Bizzell, Jr., Ex. 1 ("FedEx People Manual," Policy 4-48 Driving Qualifications) (Doc. 56-4); Declaration of Mahase Madoo (Doc. 56-8); Declaration of Theodore A. Steckel, ¶ 5

(Doc. 56-10); Declaration of John R. Takacs, ¶ 3 (Doc. 56-11); Declaration of Delroy Howell, ¶ 4 (Doc. 56-12).

D.    Samson's Offer of Employment

On February 11, 2009, Mr. Samson applied for a Technician position at FedEx's Ft. Myers' facility.  The Ft. Myer's facility only employs one Technician at that location.  The job posting Mr. Samson applied for listed the following requirements:

> High school diploma/GED.  Four years recent fleet, automotive, or truck vehicle maintenance experience.   Must possess applicable licenses or have vocational training. Knowledge of the use and operation of all automotive equipment and testing equipment gauges and tools normally associated with the troubleshooting and repair of hydraulic, gasoline and diesel automotive equipment.  Possession of a complete set of hand tools including metric sizes.  Must be able to lift and maneuver heavy vehicle components.  Ability to work without supervision for extended time periods.  Must possess a valid driver's license and be at least 21 years of age.  **Must meet qualifications as outlined in section 391 of the Federal Motor Carrier Safety Regulations.  Requires medical exam in accordance with FHWA or FAA regulations.**  Must also have light to heavy truck experience.  **Job offers are contingent upon successful completion of required examinations/checks for the particular position (e.g., drug screen, medical examinations in accordance with FHWA regulations, criminal record checks, etc.).**

(Doc. 56-2, Defendant Ex. 8) (emphasis added).

FedEx interviewed Mr. Samson for the Technician position.  Mr. Samson was the top candidate, and by letter dated March 10, 2009, FedEx sent Mr. Samson a conditional offer

of employment for the sole Technician position at the Ft. Myers facility.[5]  The letter, signed by Mahase Madoo, District Fleet Manager - Citrus District, stated that "this job offer is contingent upon your successful completion of a DOT medical examination, drug screening, or mandatory training and upon you receiving a Florida issued class A [commercial driver's license] within 90 days of your actual starting date in this position. . . ." (Doc. 56-2, Defendant Ex. 1).  Mr. Samson signed the letter and accepted the Technician position under the terms stated in it.  (Id.).

On March 11, 2009, Mr. Samson appeared for his medical examination, during which he disclosed his diabetes diagnosis.  Because of his diabetes, Mr. Samson failed his medical examination, and he was not issued a DOT Medical Certificate.  (Doc. 56-2, Defendant Ex. 3).  By letter dated March 18, 2009, Mr. Madoo withdrew FedEx's offer of employment.  The sole basis for the withdrawal was Mr. Samson's failure to successfully complete his DOT medical examination.  (Doc. 56-2, Defendant Ex. 7).

On March 19, 2009, Mr. Samson appealed the revocation of his offer of employment.  See Deposition of Richard Samson, Ex. 9 (Doc. 62-1).  Mr. Samson claims that he spoke with Mr. Madoo, and that Mr. Madoo told Mr. Samson that "we don't hire diabetics."  Id. However, Mr. Madoo himself is a Type-II diabetic who treats his condition with insulin.

---

[5]Prior to Mr. Samson's receipt of this letter, Janet Johnson, FedEx Recruitment, orally informed Mr. Samson that his offer of employment was contingent on him successfully passing a DOT physical, a drug test, and obtaining a proper commercial driver's license within 90 days. See Deposition of Richard Samson, p. 37 (Doc. 63).

There are no other allegations of any discriminatory statements or conduct on the part of FedEx.

By email dated April 2, 2009, John Durr, FedEx Senior Manager, replied to Mr. Samson's appeal, and explained that FedEx's

> vehicle mechanic positions are governed under Federal DOT regulations since we operate in all 50 states. It was the company's decision to be governed by Federal Guidelines rather that the various state regulations so we would not have to try and manage 50 sets of state regulations. Unfortunately, Federal DOT Guidelines prohibit hiring anyone that is insulin dependent.

See Deposition of Richard Samson, Ex. 5 (Doc. 62-1).

A few days after his offer of employment with FedEx was revoked, Mr. Samson learned of a DOT exemption program whereby diabetics could apply for a DOT Medical Certificate Exemption. Mr. Samson chose not to pursue the exemption because he believed the Technician position was no longer available, and therefore the exemption process would have been futile.

Mr. Samson contends that FedEx never notified him of the exemption program that he independently discovered from his own research. However, the Instructions to the Medical Examiner attached to the DOT Physical Medical Examination Form provide that "drivers who do not meet the Federal diabetes standard may call (703) 448-3094 for an

application for a diabetes exemption." See Declaration of Larry W. Bizzell, Jr., Ex. 2 (Doc. 56-5).[6]

FedEx ultimately hired John Rotundo, the second highest ranked candidate. Mr. Rotundo remains employed as the sole Technician at the Ft. Myers facility to date, and is responsible for the preventative maintenance and repair of seven (7) tractors and eight (8) straight trucks. During the approximately three (3) years he has worked at FedEx, Rotundo has never driven a commercial motor vehicle across state lines, never driven a vehicle holding any cargo, and has only test driven commercial motor vehicles on four (4) occasions.

E.    Procedural History

Mr. Samson initiated this action on January 10, 2011 with the filing of his Complaint alleging violations of the ADA and FCRA (Doc. 1). He seeks back pay, prejudgment interest, compensatory damages, front pay or, in the alternative, reinstatement, and punitive damages (Doc. 73, p. 7).

## Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying this standard, the Court

---

[6]The medical examiner is directed to review the instructions with the patient. Mr. Samson avers that he never saw the instructions, and was never made aware of them by anyone affiliated with FedEx. See Declaration of Richard Samson (Doc. 62-7).

must examine the materials on file and record evidence "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986). Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S.Ct. at 2510.

### Discussion

"The ADA provides that employers shall not discriminate against qualified individuals with a disability because of the disability." Wood v. Green, 323 F.3d 1309, 1312 (11th Cir. 2003) (citing 42 U.S.C. § 12112(a)). To establish a prima facie case of disability

discrimination under the ADA, a plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255-56 (11th Cir. 2007).[7] The Parties appear, at least for purposes of summary judgment, to agree that Mr. Samson's diabetes constitutes a disability covered by the ADA. FedEx contends that the undisputed facts establish as a matter of law that Mr. Samson is not a qualified individual, because he could not pass the DOT medical examination, could not secure a commercial driver's license and, therefore, could not perform an essential function of the Technician position.

A.    Mr. Samson Was Not A Qualified Individual With a Disability

A "[q]ualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. §1630.2(m). "Essential functions" are defined as the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. §1630.2(n)(1). A job function may be considered essential because: (1) the position exists to perform that function; (2) there are a limited number of employees available to perform that job function; and/or (3) the job function may be highly specialized. § 1630.2(n)(2). Evidence of whether a particular function is essential includes, but is not limited to: (1) the

---

[7] Claims of disability discrimination under the FCRA are analyzed using the same framework as ADA claims. Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221 (11th Cir. 2000).

employer's judgment; (2) written job descriptions prepared before advertising or interviewing applicants; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the employee to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past employees in this position; and (7) the current work experience of employees in similar jobs. § 1630.2(n)(3).

The undisputed evidence establishes as a matter of law that holding a commercial driver's license and passing a DOT medical examination were essential functions of the Technician position. FedEx's written job descriptions listed both requirements, and the offer of employment to Mr. Samson was conditioned on his passing the DOT medical exam and obtaining a class A commercial driver's license. Moreover, there was only one Technician at the Ft. Myers' Ramp, therefore no other employees were available to test-drive the commercial motor vehicles. FedEx also presented undisputed evidence that Technicians throughout Florida routinely test-drive commercial motor vehicles, and that all Technicians were required to possess both a valid commercial driver's license and a DOT medical certification. Further, if FedEx were to allow Technicians to operate commercial motor vehicles without a commercial driver's license and a valid DOT medical certification, FedEx could be subject to both criminal and civil liabilities.

Mr. Samson agrees that he was properly denied a medical certification. However, he urges the Court to find that the requirement of a medical exam should not apply to the Technician position because he would not have driven commercial motor vehicles in interstate commerce. To support this position, Mr. Samson points to the deposition of John

Rotundo, the current Ft. Myers Ramp Technician. Mr. Rotundo testified that he has only driven commercial motor vehicles on public highways four (4) times over the past three (3) years, never crossed state lines, and none of the vehicles held any cargo – facts which Mr. Samson contends at the very least create a genuine issue of material fact as to whether this particular Technician position routinely involves operating in interstate commerce. According to Mr. Samson, if the Technician position did not involve interstate commerce, the DOT regulations requiring a successful medical exam would not apply, and, in turn, would not be an essential function of the Technician position.

Mr. Samson has confused the inclusion of the "interstate commerce" term in 49 C.F.R. § 390.3 with the term "commerce" located in 49 C.F.R. § 383.3. The "interstate commerce" term defined in § 390.3 applies generally to all commercial motor vehicles weighing more than 10,001 pounds which operate in interstate commerce. However, when commercial motor vehicles exceed 26,001 pounds, the additional requirement of obtaining a CDL comes into play. See 49 C.F.R. §§ 383.3, 383.5. The regulations make clear that all employees who operate commercial motor vehicles in excess of 26,001 pounds, both in interstate and intrastate commerce, are required to obtain a commercial driver's license, and the only way to obtain such a license is to successfully complete a DOT medical examination. See 49 C.F.R. §§ 383.3, 390.3(b), 391.41(a)(1)(i). FedEx has presented undisputed evidence that the individual units in its commercial motor vehicle fleet weigh far in excess of 26,001 pounds, and the requirements of 49 C.F.R. § 383.3, including the directive that all operators of commercial motor vehicles in both interstate and intrastate

commerce possess a commercial driver's license (which can only be obtained by successfully completing a DOT medical exam) govern this case.

While it does not appear that Mr. Samson has challenged the requirement of obtaining a commercial driver's license for the Technician position, to the extent his response can be interpreted as such, that argument is squarely foreclosed by the DOT's interpretative guidance materials concerning 49 C.F.R. § 383:[8]

> *Question 2:* Do mechanics, shop help, and other occasional drivers need a [commercial driver's license] if they are operating a [commercial motor vehicle] or if they only test drive a vehicle?
>
> *Guidance:* Yes, if the vehicle is operated or test-driven on a public highway.
>
> *Question 11:* Do State motor vehicle inspectors who drive trucks and motorcoaches on an infrequent basis and for short distances as part of their job have to obtain a [commercial driver's license]?
>
> *Guidance:* Yes.
>
> *Question 13:* Do the regulations require that a person driving an empty school bus from the manufacturer to the local distributor obtain a [commercial driver's license]?
>
> *Guidance:* Yes. Any driver of a bus that is designed to transport 16 or more persons, or that has a [gross vehicle weight rating] of 26,001 pounds or more, is required to obtain a [commercial driver's license] in the applicable class with a passenger endorsement.
>
> *Question 19:* Must a civilian operator of a [commercial motor vehicle], as defined in § 383.5, who operates wholly within a

---

[8]Department of Transportation, Federal Highway Administration Regulatory Guidance for the Federal Motor Carrier Safety Regulations, 62 Fed. Reg. 16370, 16393 (April 4, 1997).

military facility open to public travel, have a [commercial driver's license]?

*Guidance:* Yes. The [commercial driver's license] requirement applies to every person who operates a [commercial motor vehicle] in interstate, foreign or intrastate commerce. Driving a [commercial motor vehicle] on a road, street or way which is open to public travel, even though privately owned or subject to military control is *prima facie* evidence of operation in commerce.

This guidance, which the Court must give due deference,[9] makes clear that all persons who operate commercial motor vehicles weighing in excess of 26,001 pounds on public roadways (regardless of whether the vehicle ever actually crosses state lines, or holds any cargo) must possess a commercial driver's license which can only be obtained by (among other things) successfully passing a DOT medical examination. See also 49 C.F.R. §§ 383.37(b); 391.41(a)(1)(i).

To the extent Mr. Samson also argues that the requirement of obtaining a commercial driver's license was not an essential function of the Technician position because the Ft. Myers position itself involved very little driving, the Court is unpersuaded.

[N]o rational factfinder could conclude that driving the vehicles during both road tests or road calls was not an essential function of the mechanic's job. . . . It takes no stretch of the imagination to believe that a mechanic would be expected to check the efficacy of his repairs. One would generally expect a mechanic who has made repairs to the brakes of a commercial vehicle would road test his work product before returning the vehicle to the UPS delivery fleet. Similarly, delivering working and

---

[9]See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984).

retrieving disabled vehicles does not strike the court as an aberrant expectation of an employer such as UPS.

Murphy v. United Parcel Service, Inc., 946 F. Supp. 872, 882-83 (D. Kansas 1996), aff'd, 141 F.3d 1185 (10th Cir. 1998) (table), aff'd 527 U.S. 516, 119 S.Ct. 2133 (1999). Although the current employee, Jon Rotundo, may not drive commercial motor vehicles on a daily basis, it is clear that driving such vehicles is an essential function of his job, and FedEx has presented unrefuted evidence establishing that Technicians throughout Florida routinely drive commercial motor vehicles as part of their regular job duties.[10]

Because the facts are undisputed that a commercial driver's license is required for the Technician position – regardless of whether the commercial motor vehicle is driven in interstate or intrastate commerce – that the license was at all times a job requirement, and that Mr. Samson was unable to obtain his license due to his unsuccessful medical examination, this Court finds as a matter of law that he is not a qualified individual with a disability. See Knutson v. Schwan's Home Service, Inc., Civil No. 10-4823 (DSD/TNL), 2012 WL 1466681 (D. Minn. Apr. 27, 2012); Ortiz v. Elgin Sweeping Services, Inc., No. 10 C 0936, 2011 WL 1930693 (N.D. Ill. May 17, 2011); Scott v. City of Yuba City, No. CIV. S-08-873 LKK/GGH, 2009 WL 4895549 (E.D. Cal. Dec. 11, 2009).

---

[10]Mr. Samson's reliance on Cleary v. Federal Express Corp., 313 F. Supp. 2d 930 (E.D. Wisc. 2004) is also unavailing. Cleary involved commercial motor vehicles weighing 10,001 pounds, but less than 26,001 pounds. Therefore, the regulations governing commercial driver's licenses were not at issue in Cleary.

B.    Alternatively, The Technician Position Involves Interstate Commerce

Even if the regulations governing commercial driver's licenses did not apply to the Technician position (by virtue of the fact that the individual commercial motor vehicles weighed less than 26,001 pounds), the Court finds that the DOT medical examination requirements in 49 C.F.R. §§ 390.5 and 391.41 would still apply to Mr. Samson.

The facts are undisputed that Technicians repair commercial motor vehicles that travel between the states – *i.e.*, in interstate commerce. The facts are also undisputed that the Technicians diagnose mechanical problems and verify repairs by driving these commercial motor vehicles on public highways. FedEx aircraft land at the various Ramps in Florida, with cargo originating from other states. That cargo is unloaded and placed on FedEx commercial motor vehicles for delivery throughout the State. Technicians repair and test-drive these vehicles to ensure that these deliveries can be made on time. This clearly falls within the definition of interstate commerce set forth in 49 C.F.R. § 390.5: "trade, traffic, or transportation in the United States [b]etween two places in a State as part of trade, traffic, or transportation originating or terminating outside the State or the United States." See e.g., Thompson v. Heiner's Bakery, 2012 WL 1835709 at * 1, n. 4 (W.D. Va. May 18, 2012) (interpreting 49 C.F.R. § 390.5's definition of "interstate commerce" to cover employees who delivered products in Roanoke, Virginia, where such products were manufactured in West Virginia  and distributed to other states as well); Thoms v. ABF Freight System, Inc., 31 F. Supp. 2d 1119, 1125 (E.D. Wisc. 1998) (holding that § 390.5 and the regulations mandating a DOT medical exam covered an employee who drove

commercial motor vehicles solely intrastate.  The determining factors were the nature of the defendant's business, and the property carried by the defendant's commercial motor vehicles "both of which clearly are part of the stream of interstate commerce.").

C.    The DOT Regulations Provide a Complete Defense

The Court finds that FedEx is entitled to summary judgment for a separate, and equally persuasive reason.  Under Title I of the ADA, "[i]t may be a defense to a charge of discrimination . . . that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation . . . ."  § 12113(a).  See also 12112(b)(6) (defining discrimination as "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability . . . unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.").

The job qualification at issue here - the successful completion of a DOT medical examination in order to obtain a commercial driver's license - is part of the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 391.41, which are binding on FedEx.  See 49 C.F.R. § 391.11.  "The validity of these regulations is unchallenged, they have the force of law, and they contain no qualifying language about individualized determinations."  Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 570, 119 S.Ct. 2162, 2171 (1999).  In

addition, the ADA recognizes a complete defense to liability where: "a challenged action is required or necessitated by another Federal law or regulation, or that another Federal law or regulation prohibits an action (including the provision of a particular reasonable accommodation) that would otherwise be required. . . ." 29 C.F.R. §1630.15(e). The Supreme Court described the relationship between DOT standards for physical qualifications and the elements of an ADA claim:

> When Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law. The Senate Labor and Human Resources Committee Report on the ADA stated that 'a person with a disability applying for or currently holding a job subject to [DOT standards for drivers] must be able to satisfy these physical qualification standards in order to be considered a qualified individual with a disability' under [the ADA].

Albertson's, 527 U.S. at 573, 119 S.Ct. at 2172-73.

In this case, it is undisputed that Mr. Samson was required to obtain a commercial driver's license and pass a DOT medical exam in order to qualify for the Technician position. The vehicles Mr. Samson would work on and test-drive all exceeded 26,001 pounds, and therefore, the DOT mandated that all operators of such vehicles obtain a commercial driver's license, regardless of whether the vehicles would be operated in interstate or intrastate commerce. 49 C.F.R. §§383.3(a); 390.3(b). FedEx's adherence to the DOT regulations is therefore a complete defense to Mr. Samson's discrimination claims. There is no evidence that FedEx's reliance on the regulations was pretextual, and

because the qualification standards are clearly job-related, FedEx's reliance on the regulations is a defense to Mr. Samson's claims.

Based on the undisputed facts and the DOT regulations and interpretive guidance, it appears, in effect, that Mr. Samson is not challenging FedEx's application of the federal regulations against him, but is arguing instead that the DOT has wrongly extended its regulations to individual operators with limited involvement in commerce, like the position that Mr. Samson sought to fill. This case however, brought under the ADA and not involving the DOT as a party, is an inappropriate device for presenting that issue. Suffice it to say that if FedEx denied Mr. Samson's employment because such action was required by existing regulations – as is the case here – even if those regulations are ultimately determined to be invalid, there was no violation of the ADA.

D.    Failure to Reasonably Accommodate

Even if Mr. Samson were able to create a material issue of fact concerning whether he is a qualified individual with a disability, his claim would fail because there was no reasonable accommodation that could be afforded him. There were no other Technicians at the Ft. Myers facility to whom the test driving of commercial motor vehicles could be assigned. Mr. Samson would have been the only Technician at that Ramp. Moreover, an employer is not required to relocate job duties which would change the essential function of a job. Clairson Industries, 492 F.3d at 1256. FedEx also could not allow Mr. Samson to work as a Technician without a commercial driver's license, as that would violate federal law, and subject FedEx to potential civil and criminal liability.

Mr. Samson argues that FedEx should have informed him of the diabetes exemption program as a reasonable accommodation. This argument fails for several reasons. First, Mr. Samson admits he was aware of the exemption program and that he chose not to pursue it. Thus, any failure on the part of FedEx to directly and explicitly inform him of the program is of no consequence. Second, FedEx was not under any obligation to inform Mr. Samson of the diabetes exemption program. Diaz Rivera v. Browning-Ferris Indus. of Puerto Rico, Inc., 626 F. Supp. 2d 244, 257 (D. P.R. 2009). Cf. Albertson's, 527 U.S. 555, 119 S.Ct. 2162 (no ADA violation due to employer's refusal to rehire former employee after he had obtained DOT waiver). Further, FedEx was not obligated to keep the position open to see if Mr. Samson could obtain an exemption. See Wood v. Green, 323 F.3d 1309, 1313 (11th Cir. 2003) ("Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which, presently, or in the immediate future, enables an employee to perform the essential functions of the job in question.") (quoting Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1226 (11th Cir. 1997) (internal quotations omitted).

## Conclusion

Because the Court finds that Mr. Samson was not a qualified individual with a disability; that the DOT regulations governing medical examinations and commercial driver's licenses afford FedEx a complete defense; and because there was no reasonable

accommodation that could be afforded to Mr. Samson, FedEx's Motion for Summary Judgment (Doc. 55) is GRANTED.

The Clerk is directed to remove this case from the trial calendar, to enter judgment in favor of Federal Express Corporation and against Richard Samson, and to terminate all other pending motions and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 29th day of June, 2012.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy